**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

LATERESA L. SMITH PLAINTIFF

v. No. 4:13CV00332 JLH

ARKANSAS PAROLE BOARD;
JOHN FELTS, in his individual and official capacity
as Chairman of the Arkansas Parole Board; and
JAMES M. WALLACE, III,
RICHARD MAYS, JR., JOSEPH PEACOCK,
RICHARD BROWN, JR.,
ABRAHAM CARPENTER, JR., and
DAWNE BENAFIELD VANDIVER, in their
official capacities as Commissioners of the
Arkansas Parole Board DEFENDANTS

**OPINION AND ORDER**

Lateresa Smith brings this action against her former employer, the Arkansas Parole Board, and members of the Board, alleging race discrimination, sex discrimination,[1] and retaliation in violation of Title VII and the Equal Protection Clause of the Fourteenth Amendment. Smith alleges that she was passed over for promotions because of her race and sex, that she was discharged because of her race, and that she was discharged in retaliation for complaining about discriminatory treatment. The defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the motion for summary judgment is granted.

---

[1] Smith failed to even mention sex discrimination, aside from quoting general provisions of law, in her response to the defendants' motion for summary judgment. *See* Document #35. According to the complaint, the defendants discriminated against Smith based on her sex when they failed to promote her to the investigator position, hiring John Belken instead. Document #1 at 3, ¶¶12-14. But Smith has abandoned her claim based on sex discrimination by failing to respond to the defendants' summary judgment motion, let alone provide the Court evidence to create a dispute as to whether gender was a motivating factor in the defendants' decision not to promote Smith. *See Moore-El v. Luebbers*, 446 F.3d 890, 899 n. 2 (8th Cir. 2006); *United States v. Zavala*, 427 F.3d 562, 565, n. 1 (8th Cir. 2005). However, even if the Court did not find that the claim had been abandoned, it is barred by the statute of limitations for reasons to be discussed.

**I.**

The Arkansas Parole Board hired Smith in June 2006 as a "Secretary I." One year later, she received an automatic promotion to the level of "Secretary II." In November 2007, she applied for the position of "Accounting Technician II" and the State approved her for that position in December 2007. A statewide job reclassification reclassified the position of "Accounting Technician II" as a "Fiscal Support Specialist" in June 2009. And then later in 2010 the position of "Fiscal Support Specialist" was administratively changed to "Administrative Specialist III." Smith interviewed for the position of "Investigator" in July 2011, but John Belken was hired instead. Then, also in July 2011, John Felts became the Chairman of the Arkansas Parole Board. Smith began documenting statements or occurrences she believed significant to making sure that Felts upheld promises he made at the time he assumed his position as Chairman. For example, Smith documented that the Board moved Laura Harp, an "Administrative Specialist II" in Revocation," to an "Administrative Specialist III" position in Administration in January 2013. The Board did not offer the opportunity to Smith, though she had seniority over Harp and trained Harp for her position in Revocation.

On January 28, 2013, Smith knocked on Felts' office door and asked to speak with him. She proceeded to explain to Felts concerns regarding her advancement opportunities with the Board, indicating to him that she had been noting certain changes and wondering why they had been made. Felts expressed to Smith that he understood her concerns, but that he was uncertain what the future would hold. One reason Felts provided Smith for his uncertainty was the potential "earned discharge credits," which could affect the number of inmates being released. He also informed Smith that the Board was working to function more efficiently. Felts stated to Smith that if she was particularly interested in a certain position, the Board would provide her the opportunity to assume

that position if they knew it was permanent. Smith then stated that she felt the Board overlooked her for the position of "Investigator," that she was concerned that a white woman had been moved over to be Felts' assistant, and that she needed to move on if there were no opportunities for her advancement. Smith also expressed to Felts her opinion that office operations were racially separated, specifically that black employees were all "in the back." Unbeknownst to Felts, Smith recorded the conversation on her phone.

An employee informed Felts that Smith was "keeping a file" on him, or on the Board, at some point between the January 28 conversation and February 14. During that time, employees attended an in-house training on workplace environment. Smith stated at the training session that prejudice made the Arkansas Parole Board workplace environment difficult. Belken, who also attended the training, reported the comment to Felts. Then, on February 14, the Board conducted a regular meeting and invited Smith to participate in an executive session, held afterward. Felts explained to Smith in the presence of the other board members his concerns about her and allowed Smith the opportunity to respond. Smith produced her phone, placed it up to the microphone, and began to play the recording of her January 28 conversation with Felts. At that time, Felts and the board members first learned that Smith had recorded the conversation. Felts gave Smith an opportunity to express her concerns and then she was asked to leave the room, so that the board members could discuss the issue. When Smith came back into the room, she was informed that she would no longer be an employee of the Arkansas Parole Board and given the opportunity to resign. Smith resigned.

**II.**

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact is presented only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Spencer v. Jackson Cnty. Mo.*, 738 F.3d 907, 911 (8th Cir. 2013). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). "There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial. *Torgerson*, 643 F.3d at 1043.

**III.**

In addition to declaratory, injunctive, and equitable relief, Smith seeks money damages from the Arkansas Parole Board and its board members in their official capacities. Document #1 at 6, ¶38. The defendants argue that the Arkansas Parole Board and its employees may not be sued for money damages under § 1983. Document #27 at 35. A suit against a state agency or a suit against a state official in his or her official capacity is no different from a suit against the State. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989). It follows that when a plaintiff sues a state agency or state official, she is restricted by the language of § 1983 and by the Eleventh Amendment in the type of relief available. *See id*. The United States Supreme Court has held that Congress did not intend § 1983 to abrogate the immunity afforded to the States by the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 338, 99 S. Ct. 1139, 1144, 59 L. Ed. 2d 358 (1979). It has also held that a state is not a "person" as the term is used in § 1983,[2] which renders claims for monetary relief against a state incognizable. *Will*, 491 U.S. at 71, 109 S. Ct. at 2312. Because the Eleventh Amendment generally bars a private plaintiff from suing a state in federal court and because states are not persons from whom monetary relief can be sought under § 1983, Smith's claims for money damages against the Arkansas Parole Board and its members in their official capacities are barred. Smith's claims for injunctive relief against the board members in their official capacities, however, are not barred. "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions

---

[2] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . 42 U.S.C. § 1983.

for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71, 109 S. Ct. at 2312, n. 10 (quoting *Ky. v. Graham*, 473 U.S. 159, 167, 105 S. Ct. 3099, 3106, 87 L. Ed. 2d 114, n. 14 (1985)).

**IV.**

Smith alleges that she was passed over for three promotions because of her race: (1) an "Investigator" position; (2) an "Executive Assistant" position; and (3) an administrative position. Document #1 at 3-4, ¶¶12-17. The defendants argue that any claims based on the "Investigator" and "Executive Assistant" positions are barred by the statute of limitations. Document #27 at 14. Title VII provides that a charge must be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). A claim for employment discrimination is barred if a plaintiff fails to timely file such a charge. *See Kline v. City of Kansas City, Fire Dept.*, 175 F.3d 660, 664 (8th Cir. 1999). Smith filed a charge with the EEOC on February 20, 2013. Document #1 at 8-9. In July 2011, the Arkansas Parole Board chose Belken for the position of investigator instead of Smith. Document #34 at 5, ¶31. Because Smith failed to file a charge with the EEOC within 180 days, any claim based on this unlawful employment practice–failure to promote Smith to the position of investigator because of her race–is barred. In April 2012, the Arkansas Parole Board chose Melissa Haney for the position of Executive Assistant to the Director, instead of Smith. Document #34 at 7, ¶39. Again, because Smith failed to file a charge with the EEOC within 180 days, any claim based on this unlawful employment practice–failure to promote Smith to the position of executive assistant because of her race–is barred.

**V.**

Smith alleges three different types of Title VII violations: (1) failure to promote; (2) discriminatory discharge; and (3) unlawful retaliation. A plaintiff must provide either direct evidence of a violation or provide circumstantial evidence to create an inference of discrimination or retaliation to survive a motion for summary judgment on a Title VII claim. *Shirrell v. St. Francis Med. Center*, 793 F.3d 881, 887 (8th Cir. 2015). Direct evidence of a Title VII violation "establishes 'a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact-finder that the illegitimate criterion actually motivated' the employer's decision." *Putman v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003) (quoting *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997)). Smith provides no direct evidence of discrimination, so the Court will apply the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25, 36 L. Ed. 2d 668 (1973). Under *McDonnell Douglas*, the plaintiff must first present a prima facie case of intentional discrimination. *Id*. The burden then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the action it took. *Id*. If the defendant meets that burden, which is "minimal," the burden shifts back to the plaintiff to show that the proffered nondiscriminatory reason is merely pretext for unlawful discrimination. *Id*. *See also Cody v. Prairie Ethanol, LLC*, 763 F.3d 992, 996 (8th Cir. 2014) (applying *McDonnell Douglas* burden-shifting framework).

First, to establish a prima facie case of discrimination based on a failure to promote, Smith must show that (1) she is a member of a protected class; (2) that she was qualified for the promotion and that she applied to be promoted to the available position; (3) that she was rejected; and (4) that

a similarly-qualified employee, not part of the protected group, was promoted instead. *Bennett v. Nucor Corp.*, 656 F.3d 802, 819-20 (8th Cir. 2011). "Failure to formally apply for a position does not bar a plaintiff from establishing a prima facie case, as long as the plaintiff 'made every reasonable attempt to convey [her] interest in the job to the employer.'" *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011) (quoting *Chambers v. Wynne Sch. Dist.*, 909 F.2d 1214, 1217 (8th Cir. 1990)).

The only alleged promotion that is not barred by the statute of limitations is the administrative position Laura Harp assumed in January 2013. Document #34 at 7, ¶42. The defendants contend that moving Smith to that position would have been a demotion, rather than a promotion; therefore, she cannot state a prima facie case for failure to promote. Document #27 at 22. To corroborate this contention, the defendants provide an affidavit by Mahoganey Franklin. Document #28-4. Franklin is the HR Manager/Fiscal support Supervisor for the Arkansas Parole Board, making her responsible for payroll and personnel. *Id*. at 1, ¶1. Franklin stated that "[i]n or around January 2013, Ms. Harp was moved from the Revocation Section to the Administration Section. Ms. Harp did not receive a change in pay or in title in January 2013." *Id*. at 3, ¶¶16-17. In response, Smith provides employment forms indicating that Harp received a pay increase from $10.4938 per hour to $12.1480 per hour when she was moved from Revocation to Administration, though she retained the same job title–"Administrative Specialist III." Document #34-2. But the relevant question is not whether Harp received a promotion but whether Smith would have received a promotion by assuming the position. At the time, Smith was an "Administrative Specialist III," but earned $12.85 an hour. Document #28-4 at 2, ¶7. Smith admitted that she would not have been interested in making the move to Administration if the position did not pay more. Document #34

at 7-8, ¶45. Smith does not offer any evidence that she would have been paid more than Harp and more than $12.85 per hour, her own wage at the time, if she had been transferred to Administration. Because the position would not have been a promotion for Smith, she cannot establish a prima facie case of discrimination based on the defendants' decision to move Harp, rather than her, to Revocation. The defendants are entitled to judgment as a matter of law.

Second, to establish a prima facie case of race discrimination based on alleged discriminatory discharge Smith must show that (1) she is a member of a protected class; (2) that she met her employer's legitimate expectations; (3) that she suffered an adverse employment action, and (4) that the circumstances give rise to an inference of discrimination. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010). Assuming that Smith has established a prima facie case of race discrimination based on alleged discriminatory discharge, the burden shifts to the defendants to proffer a legitimate, non-discriminatory purpose for Smith's termination. The defendants attach the affidavit of Felts, providing that he felt deceived by Smith's conduct in recording him without his knowledge, that he questioned her honesty, and that he was unsure if he would able to trust Smith again. Document #28-5 at 6. Richard Brown, Jr., also a board member, stated: "For me, Ms. Smith's action of secretly recording a Board member caused me to decide that Ms. Smith's employment with the Arkansas Parole Board did not need to continue. I was in favor of Ms. Smith's employment being terminated." Document #28-10 at 2, ¶7. Other board members echoed this sentiment. Document #28-11 at 1, ¶5; Document #28-12 at 1, ¶8.

The board members also indicated that the Arkansas Parole Board has confidentiality requirements, that all staff members are made aware of the requirements, and that Ms. Smith's action of secretly recording the conversation with Felts caused them to question her ability to maintain the

confidentiality of office decisions. Document #28-11 at 2, ¶6; Document #28-12 at 1, ¶5. The Eighth Circuit considers insubordination and violation of company policy legitimate reasons for termination. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999). The defendants do not contend that Smith actually violated company policy; rather, they contend that they no longer trusted that she would abide by company policy. The defendants have proffered a legitimate, nondiscriminatory reason for terminating Smith.

Because the defendants have presented evidence of a legitimate, nondiscriminatory reasons for its treatment of Smith, she must point to some evidence that the proffered reason is pre-textual. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002). To carry this burden, Smith must show that the defendants' justification for terminating her employment is "unworthy of credence." *Id*. at 834. The Eighth Circuit has explained:

> A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision. We have observed that there are at least two routes for demonstrating a material question of fact as to pretext. First, a plaintiff may succeed indirectly by showing the proffered explanation has no basis in fact. Second, a plaintiff can directly persuade the court that a prohibited reason more likely motivated the employer.

*Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 854 (8th Cir. 2012) (internal citations omitted). Smith argues that a prohibited reason more likely motivated the defendants because similarly-situated employees were treated differently. *See* Document #35 at 18. "'An employee's attempt to prove pretext or actual discrimination requires more substantial evidence [than it takes to make a prima facie case], however, because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification.'" *Smith*, 302 F.3d at 834 (quoting *Sprenger v. Federal Home Loan Bank*, 253 F.3d 1106, 1111 (8th Cir. 2001)).

Smith argues that "white employees, who have committed similar or even worse offenses, were not treated in a similar fashion." Document #35 at 17-18. Specifically, three white employees–Jim Williams, Carol Bohannan, and John Belken–were placed on probation, rather than terminated, for acts of insubordination. Document #35 at 19-23. "In order for disparate treatment to be probative of pretext, [Smith] must show that [she] was similarly situated to more leniently treated employees in 'all relevant respects'–a 'rigorous' standard at the pretext stage." *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 521 (8th Cir. 2010) (quoting *Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009)). "To be probative evidence of pretext, the misconduct of the more leniently disciplined employees must be of comparable seriousness." *Wimbley*, 588 F.3d at 962. In *Wimbley*, the plaintiff was a correctional officer. *Id*. She and a fellow correctional officer both regularly carried pepper spray, and both discharged it in the presence of an inmate. *Id*. at 963. The defendant terminated the plaintiff before asking internal affairs to investigate but took no disciplinary action against the fellow correctional officer, instead sending him to internal affairs for an investigation. *Id*. The Eighth Circuit held that a reasonable jury could find that the defendant's different treatment of the plaintiff and the fellow correctional officer was evidence that the stated reasons were pretextual. *Id*.

Smith has not shown that the misconduct of Williams, Bohannan, and Belken was comparable to her misconduct in seriousness. The board placed Williams and Bohannan on probation for six months for attempting to undermine the operation of the Arkansas Parole Board by pursuing the termination of an employee–Sharon Doss–whom the board had decided to place on probation. Document #34-4 at 4-6. According to Felts, "there was continued around-the-back working individual board members, trying to convince them that we needed to terminate Ms. Doss."

Document #34-3 at 8-9. Felts directed Williams and Bohannan to stop pressuring members of the board to change the decision, but they continued to do so. *Id*. at 9. The board placed Belken on probation for six months for insubordination toward Commissioner Jimmy Wallace during a conversation the two were having about a particular case. Document #34-3 at 11; Document #34-4 at 1. Williams, Bohannan, and Belken were insubordinate, but Smith's misconduct was more than merely insubordinate. Under the guise of a conversation about her future with the parole board, she secretly recorded a conversation with the chairman of the board, leading board members to conclude that she was not trustworthy. *Cf. Argyropoulos v. City of Alton*, 539 F.3d 724, 736-37 (7th Cir. 2005) (secretly recording a meeting with superiors was a legitimate, nondiscriminatory reason for termination, and the plaintiff failed to show pretext); *Talanda v. KFC Nat'l Mgmt. Co.*, No. 94-C-1668, 1997 WL 160695, at *6 (N.D. Ill. April 2, 1997) (secretly recording a manager and playing the recording for a co-worker "unnecessarily created a climate of intrigue and suspicion" and undermined the manager's authority); *Hashop v. Rockwell Space Operations Co.*, 867 F. Supp. 1287, 1300-01 (S.D. Tex. 1994) (secretly recording a supervisor in violation of company policy was a legitimate reason for termination).

Smith also provides evidence that Doss–the employee whom Williams and Bohannan believed should have been terminated–was placed on probation for six months due to unprofessional gossiping and activities that did not promote the purpose and best interests of the Arkansas Parole Board. Document #34-4. Like Smith, Doss is a black female. Document #28-1 at 43. Felts stated that Doss shared information–of unspecified content–with a former employee who had filed a lawsuit against the Arkansas Parole Board. Document #34-3 at 8. Doss's misconduct is more similar to Smith's conduct than is that of the three white employees whom she cites as comparators.

Doss engaged in behavior demonstrating characteristics inconsistent with the Arkansas Parole Board's confidentiality policy. Yet, Doss was only given probation. The fact that the board did not terminate a black employee for engaging in similar misconduct undermines Smith's claim that she was discharged because of her race. Because the misconduct of similarly situated white employees was not of comparable seriousness and because the board meted out more lenient treatment to a black employee, the evidence presented by Smith does not raise a material issue of fact as to pretext. A reasonable factfinder could not infer that the board discharged Smith because of her race, rather than because she surreptitiously recorded a conversation with Felts and compromised the board's trust.

Third, to establish a prima facie case of retaliation, Smith must show that (1) she engaged in protected conduct; (2) that she suffered an adverse employment action, and (3) that the adverse action was causally linked to the protected conduct. *Putman*, 348 F.3d at 737. Smith has established a prima facie case retaliation. And, as explained above, the defendants have proffered a legitimate, non-discriminatory purpose for Smith's termination. Smith argues that she was actually discharged in retaliation because Felts was upset about the allegation of discrimination lodged by her during the January 28 meeting. Document #35 at 28. But then she points out that another black employee complained that discrimination in the workplace made it unpleasant. *Id*. Felts, however, never confronted that employee nor did he take disciplinary action against her. Document #34-3 at 6. Smith argues that Felts did not take action against the other employee because that employee did not express her concern directly to him, as she did. Document #35 at 28. She states: "It is apparent that [the other employee who complained] was treated differently, because Ms. Smith was the only employee who accused Mr. Felts of making decisions based on race, which made him angry." *Id*.

To the contrary, evidence that another employee complained about discrimination in the workplace but was not disciplined or confronted has a tendency to show that Smith was discharged because of the defendants' legitimate reason, rather than in retaliation for complaining. While that fact alone would not preclude a finding that the proffered reason is pretextual, as explained above, the evidence shows that the defendants terminated Smith because she secretly recorded her conversation with Felts. Smith has failed to create a genuine issue of material fact as to pretext.

**VI.**

Smith also alleges claims for employment discrimination based on race and unlawful retaliation in violation of the Equal Protection Clause pursuant to § 1983. Document #1 at 1. The Equal Protection Clause of the Fourteenth Amendment confers an individual a right to be free of racial discrimination in public employment. *Henley v. Brown*, 686 F.3d 634, 642 (8th Cir. 2012). "Proof of discriminatory racial purpose is required to establish an equal protection violation; an official act is not unconstitutional solely because it has a racially disproportionate impact." *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987). Smith alleges that the defendants engaged in intentional discrimination, rather than race-neutral conduct that disproportionately impacted a protected class. Because claims for intentional employment discrimination pursuant to § 1983 are analyzed under the same framework as claims for employment discrimination pursuant to Title VII, judgment as a matter of law[3] in favor of the defendants is proper for the reasons previously mentioned. *See Burton v. Ark. Secretary of State*, 737 F.3d 1219, 1237 (8th Cir. 2013).

[3] Because "[s]ubstantive standards for gender discrimination cases brought under Title VII and those brought under § 1983 are the same," *Tyler v. University of Arkansas Bd. of Trustees*, 628 F.3d 980, 990 (8th Cir. 2011), summary judgment is also appropriate for any claim based on sex discrimination in violation of the Equal Protection Clause.

Regarding Smith's claim for retaliation in violation of the Equal Protection Clause, the Eighth Circuit directly addressed the issue in *Burton v. Ark. Secretary of State*: "'The right to be free from retaliation is clearly established as a *first amendment* right and as a statutory right under Title VII; but no clearly established right exists under the *equal protection* clause to be free from retaliation."' *Id.* (quoting *Ratliff v. DeKalb County, Ga.*, 62 F.3d 338, 340 (11th Cir. 1995)). "We have only recognized that § 1983 provides a vehicle for redressing claims of retaliation *on the basis of the First Amendment*." *Id.* (quoting *Tyler*, 628 F.3d at 986). The Eighth Circuit held that no established right exists under the equal protection clause to be free from retaliation. *Id*. Therefore, Smith's claim that the defendants engaged in unlawful retaliation in violation of the Equal Protection Clause fails as a matter of law.

**CONCLUSION**

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED. Document #26.

IT IS SO ORDERED this 17th day of November, 2015.

J. Leon Holmes

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE